ANNE L. SMALLEY *vs.* PLANNING BOARD OF HARWICH.

Barnstable. May 13, 1980. — October 14, 1980.

Present: GOODMAN, DREBEN, & NOLAN, JJ.

*Subdivision Control,* Planning board, Subdivision, Zoning requirements.

A plan showing the proposed division of a tract of land into two lots, both of which had frontage on a public way greater than the minimum frontage required by the town's zoning by-law and both of which had structures which were standing when the Subdivision Control Law went into effect in the town, was entitled to an endorsement under G. L. c. 41, § 81P, that approval under the Subdivision Control Law was not required even though the plan showed violations of the area and sideline requirements of the zoning by-law. [600-605]

CIVIL ACTION commenced in the Superior Court on April 10, 1978.

The case was heard by *Prince,* J.

The case was submitted on briefs.

*Anne L. Smalley,* pro se.

*James M. Falla* for the defendant.

GOODMAN, J. This is an appeal (G. L. c. 41, § 81BB) by the planning board of Harwich (board) from a judgment annulling its decision refusing an endorsement under G. L. c. 41, § 81P,[1] that "approval under the subdivision control

---

[1] General Laws c. 41, § 81P, as appearing in St. 1963, c. 363, § 1, provides in pertinent part:

"Any person wishing to cause to be recorded a plan of land situated in a city or town in which the subdivision control law is in effect, who believes that his plan does not require approval under the subdivision control law, may submit his plan to the planning board of such city or town in the manner prescribed in section eighty-one T, and, if the board finds that the plan does not require such approval, it shall forthwith, without a public hearing, endorse thereon or cause to be endorsed thereon by a person authorized by it

law [was] not required" (a § 81P endorsement) on a plan submitted on March 20, 1978, by the plaintiff, dividing into two lots a tract of land which she owns in Harwichport (locus). (The board filed its decision of refusal with the town clerk on March 24, 1978.) The judgment also declared that the owner was entitled to the endorsement. The case was tried on a "Statement of Agreed Facts," including various exhibits from which the following appears. The locus consists of 34,925 square feet on which there are two buildings, a residence and a barn. Of the two lots shown on the plan, one has an area of 14,897 square feet and includes the residence; the other has an area of 20,028 square feet and includes the barn. Both structures were standing when the Subdivision Control Law went into effect in Harwich, and each of the lots shown on the plan has frontage on a public way greater than the 100-foot minimum frontage required by the Harwich zoning by-law. See definition of "subdivision" in G. L. c. 41, § 81L,[2] clauses

---

the words 'approval under the subdivision control law not required' or words of similar import . . . . Such endorsement shall not be withheld unless such plan shows a subdivision."

[2] General Laws c. 41, § 81L, as amended through St. 1965, c. 61, defines "subdivision" as:

"[1] *'Subdivision' shall mean the division of a tract of land into two or more lots* and shall include resubdivision, and, when appropriate to the context, shall relate to the process of subdivision or the land or territory subdivided; [2] *provided, however, that the division of a tract of land into two or more lots shall not be deemed to constitute a subdivision within the meaning of the subdivision control law if, at the time when it is made, every lot within the tract so divided has frontage on (a) a public way* or a way which the clerk of the city or town certifies is maintained and used as a public way, or (b) a way shown on a plan theretofore approved and endorsed in accordance with the subdivision control law, or (c) a way in existence when the subdivision control law became effective in the city or town in which the land lies, having, in the opinion of the planning board, sufficient width, suitable grades and adequate construction to provide for the needs of vehicular traffic in relation to the proposed use of the land abutting thereon or served thereby, and for the installation of municipal services to serve such land and the buildings erected or to be erected thereon. [3] *Such frontage shall be of at least such distance as is so then required by zoning or*

designated [2], [3], and [4]. However, the zoning by-law requires a minimum area of 20,000 square feet for any use other than a guest house,[3] so that the smaller lot of 14,897 square feet containing the residence does not conform to the area requirements of the by-law. The plan also indicates violations of the sideline requirements of the zoning by-law. The board contends that the zoning violations indicated on the plan justify its decision to withhold a § 81P endorsement. It points to G. L. c. 41, § 81M, which sets out the general purpose of the subdivision control law and declares that "[t]he powers of a planning board . . . under the subdivision control law shall be exercised with due regard . . . for insuring compliance with the applicable zoning ordinances or by-laws . . . ."[4]

---

*other ordinance or by-law,* if any, of said city or town for erection of a building on such lot, and if no distance is required, such frontage shall be of at least twenty feet. Conveyances or other instruments adding to, taking away from, or changing the size and shape of, lots in such a manner as not to leave any lot so affected without the frontage above set forth, or [4] *the division of a tract of land on which two or more buildings were standing when the subdivision control law went into effect in the city or town in which the land lies into separate lots on each of which one of such buildings remains standing, shall not constitute a subdivision* [emphasis supplied]."

Each italicized clause will be referred to by the bracketed number preceding it.

[3]Guest houses require 20,000 square feet plus 2,000 square feet per unit.

[4]General Laws c. 41, § 81M, as amended through St. 1969, c. 884, § 2, reads:

"The subdivision control law has been enacted for the purpose of protecting the safety, convenience and welfare of the inhabitants of the cities and towns in which it is, or may hereafter be, put in effect by regulating the laying out and construction of ways in subdivisions providing access to the several lots therein, but which have not become public ways, and ensuring sanitary conditions in subdivisions and in proper cases parks and open areas. The powers of a planning board and of a board of appeal under the subdivision control law shall be exercised with due regard to the provision of adequate access to all of the lots in a subdivision by ways that will be safe and convenient for travel; for lessening congestion in such ways and in the adjacent public ways; for reducing danger to life and limb in the operation of motor vehicles; for securing safety in the

In view of the legislative history and judicial interpretation of § 81P, we do not read that section to place the same duties and responsibilities on the board as it has when it is called upon to approve a subdivision. Compare G. L. c. 41, § 81U; *Doliner* v. *Planning Bd. of Millis,* 343 Mass. 1, 6 (1961). Provision for an endorsement that approval was not required first appeared in 1953, when § 81P was enacted. St. 1953, c. 674, § 7. Theretofore plans not requiring approval by a planning board could be lawfully recorded without reference to the planning board. The purpose of § 81P, as explained by Mr. Philip Nichols on behalf of the sponsors of the 1953 legislation, was to alleviate the "difficulty . . . encountered by registers of deeds in deciding whether a plan showing ways and lots could lawfully be recorded." 1953 House Doc. No. 2249, at 55. The entire explanation is illuminating and is set out in the margin.[5]

case of fire, flood, panic and other emergencies; for insuring compliance with the applicable zoning ordinances or by-laws; for securing adequate provision for water, sewerage, drainage, underground utility services, fire, police, and other similar municipal equipment, and street lighting and other requirements where necessary in a subdivision; and for coordinating the ways in a subdivision with each other and with the public ways in the city or town in which it is located and with the ways in neighboring subdivisions. It is the intent of the subdivision control law that any subdivision plan filed with the planning board shall receive the approval of such board if said plan conforms to the recommendation of the board of health and to the reasonable rules and regulations of the planning board pertaining to subdivisions of land; provided, however, that such board may, when appropriate, waive, as provided for in section eighty-one R, such portions of the rules and regulations as is deemed advisable."

[5] "Section 81P is entirely new. It should be remembered that under the present law a plan showing lots and ways may be recorded without the approval of the planning board if such ways are existing ways and not 'proposed ways.' So much difficulty has been encountered by registers of deeds in deciding whether a plan showing ways and lots could lawfully be recorded under this provision without the approval of the local planning board, that it seemed best to require the person who intends to record such a plan and who contends that it is not a 'subdivision' within the meaning of the law, because all of the ways shown on the plan are already existing ways, to submit it to the planning board, and if the board agrees

This purpose is manifested in the insertion by St. 1953, c. 674, § 7, of G. L. c. 41, § 81X, which provided — as it now provides — that: "No register of deeds shall record any plan showing a division of a tract of land into two or more lots, and ways, . . . unless (1) such plan bears an endorsement of the planning board of such city or town that such plan has been approved by such planning board, . . . or (2) such plan bears an endorsement . . . as provided in [§ 81P]." See 1953 House Doc. No. 2249, at 59. See also 1954 Ann. Survey Mass. Law § 2.7; Johnson, Note on the New Subdivision Control Law, 38 Mass.L.Q. (No. 4) 13 (1953).

Thus § 81P was not intended to enlarge the substantive powers of the board but rather to provide a simple method to inform the register that the board was not concerned with the plan — to "relieve [ ] certain divisions of land of regulation and approval by a planning board ('approval . . . not required') . . . because the vital access is reasonably guaranteed . . . ." *Gifford* v. *Planning Bd. of Nantucket*, 376 Mass. 801, 807 (1978).[6] Thus, we have held that a § 81P endorsement "gives the lots no standing under the zoning ordinance." *Gattozzi* v. *Director of Inspection Servs. of Melrose*, 6 Mass. App. Ct. 889 (1978), citing *Alley* v. *Building Inspector of Danvers*, 354 Mass. 6, 7-8 (1968). See *Goldman* v. *Planning Bd. of Burlington*, 347 Mass. 320, 324 (1964); *Giovannucci* v. *Board of Appeals of Plainville*, 4 Mass. App. Ct. 239, 243 (1976). The generally routine

---

with his contention, it can endorse on the plan a statement that approval is not required, and the plan can be recorded without more ado. Provision is made for settling the question as summarily as possible in the unlikely event that there is a disagreement over the necessity of approval."

[6] That case presented "quite exceptional" circumstances which made it necessary to determine whether there was in fact compliance with the "frontage" requirements rather than a "purely formal or technical compliance" lending itself to evasion and circumvention of the primary purpose of the Subdivision Control Law to provide "practical accessability." See *McCarthy* v. *Planning Bd. of Edgartown*, 381 Mass. 86, 87 (1980). Cf. *Gallitano* v. *Board of Survey & Planning of Waltham, ante* 269, 272-273 (1980).

nature of a § 81P endorsement is further indicated by the provision in § 81P that such an endorsement be made "forthwith, without a public hearing." It is also emphasized by St. 1961, c. 332, which adds the provision: "Such endorsement shall not be withheld unless such plan shows a subdivision." (See n.1.) Further, were we to accept the defendant's contention that a planning board has a responsibility with reference to zoning when making a § 81P endorsement, it would imply a similar responsibility with reference to the other considerations in § 81M (see n.4), not only "for insuring compliance with the applicable zoning [laws]" but "for securing adequate provision for water, sewerage, drainage, underground utility services," etc. A § 81P endorsement is obviously not a declaration that these matters are in any way satisfactory to the planning board. In acting under § 81P, a planning board's judgment is confined to determining whether a plan shows a subdivision.

Nor can we say that the recording of a plan showing a zoning violation, as this one does, can serve no legitimate purpose. The recording of a plan such as the plaintiff's may be preliminary to an attempt to obtain a variance, or to buy abutting land which would bring the lot into compliance, or even to sell the nonconforming lot to an abutter and in that way bring it into compliance. In any event, nothing that we say here in any way precludes the enforcement of the zoning by-law should the recording of her plan eventuate in a violation.

The board also argues that the phrase "used, or available for use" in the definition of "lot"[7] refers to a lot meeting the zoning requirements. From that it concludes that the two exclusions from the definition of "subdivision" (see n.2, clauses [2], [3], and [4]) on which the plaintiff relies for a § 81P endorsement have no application because they both refer to lots meeting the zoning requirements. The argu-

---

[7] General Laws c. 41, § 81L, defines "lot" as follows: "'lot' shall mean an area of land in one ownership, with definite boundaries, used, or available for use, as the site of one or more buildings."

ment is without merit. The short answer is that it is self-defeating. If a nonconforming "lot" takes a plan out of the exceptions to a subdivision it must also take it out of the definition of "subdivision" itself: — "the division of a tract of land into two or more *lots*" (emphasis supplied). G. L. c. 41, § 81L (see n.2, cl. [1]). See *Bloom* v. *Planning Bd. of Brookline,* 346 Mass. 278, 283-284 (1963). But as we have indicated above, if this plan does not create a subdivision within § 81L, it is entitled to an endorsement under the second sentence of § 81P inserted by St. 1961, c. 332. In any event the defendant points to nothing to indicate that the definition of "lot" sets out anything but physical characteristics rather than zoning limitations. Indeed, it appears that this argument is a mere afterthought, for the statement of agreed facts uses the word "lot" without reference to whether it conforms to a zoning by-law.

We therefore affirm the judgment. In this connection we note that the lower court has retained jurisdiction though so far as appears nothing remains to be done but to place a § 81P endorsement on the plan in accordance with the judgment. Judgment is thus sufficiently final to warrant our review. *Cape Ann Land Dev. Corp.* v. *Gloucester,* 371 Mass. 19, 25 n.8 (1976). We cannot say that the retention of jurisdiction (which the parties do not argue) was an abuse of discretion.

*Judgment affirmed.*