JOSEPH J. ARRIGO & another *vs.* PLANNING BOARD OF
FRANKLIN & others[1]
(and a companion case[2]).

Norfolk. February 27, 1981. — December 21, 1981.

Present: HALE, C.J., ARMSTRONG, & PERRETTA, JJ.

*Zoning,* Variance. *Practice, Civil,* Zoning appeal, Subdivision control
    appeal. *Subdivision Control,* Plan, Decision of planning board,
    Frontage on public way.

Where the conditions for a zoning variance set out in G. L. c. 40A, § 10,
    were not met, the action of a municipal board of appeals granting a
    variance for a building lot with 186.71 feet of frontage on a public
    way in a zone where the municipality's zoning by-law required 200
    feet of frontage was properly annulled. [804]
Discussion of the power of a municipal planning board, in granting
    approval of a plan of lots under the Subdivision Control law, to waive
    strict compliance with the frontage requirement as specified in the
    municipality's zoning by-law. [804-806]
A municipal planning board did not exceed its authority in concluding
    that a fourteen-foot deviation from the frontage requirement for a lot
    as specified in the municipality's zoning by-law would not be incon-
    sistent with the intent and purpose of the Subdivision Control Law.
    [806-811]
Approval of a subdivision plan by a municipal planning board was pre-
    sumed to be regular, and the motives of its members were assumed
    proper where the evidence suggested no impropriety. [811]

CIVIL ACTIONS commenced in the Superior Court on
December 15, 1976, and May 18, 1977, respectively.

The cases were heard by *Garrity, J.*

*Howard C. Abbott* for Raymond D. Mercer & another.

*Paul G. Murphy* for the plaintiffs.

---

[1] Raymond D. and Wanda L. Mercer.

[2] Joseph J. Arrigo & another *vs.* Board of Appeals of Franklin & others.

ARMSTRONG, J.   Joseph Arrigo and his wife brought these actions for the purpose of overturning decisions of two town boards which had the effect of permitting their neighbors, Raymond D. Mercer and his wife, to create a buildable lot which did not conform to the 200-foot frontage requirement of the rural-residential zone in which they all live. The cases are here on the Mercers' appeals from decisions by which a judge of the Superior Court reversed both boards.

The background facts are not in dispute.   In 1972 the Mercers purchased a parcel of roughly thirty acres with 986.71 feet of frontage on South Street.   In January, 1973, they sold five acres with 400 feet of frontage to the Arrigos. In February, 1976, having contracted to sell a lot with 186.71 feet of frontage to one Ballarino and his wife, the Mercers applied for a variance for such a lot.   That application was denied in April, and the Mercers instead sold the Ballarinos a seven-acre lot with the requisite 200 foot frontage.   That sale left the Mercers holding substantial acreage with only 386.71 feet of frontage.   In September, 1976, the Mercers again applied for a variance for a lot with 186.71 feet of frontage, putting before the board of appeals a plan which showed two lots, one with 5.3 acres and 200 feet of frontage, and the other with 4.7 acres and the deficient frontage.[3]   This time the board of appeals approved the application, and the Arrigos appealed under the provisions of G. L. c. 40A, § 17, as in effect prior to St. 1978, c. 478, § 32.

On February 1, 1977, the Mercers applied to the planning board for approval of the plan showing the two-lot division using the remaining frontage.   While that plan was await-ing approval, the Mercers appear to have sold off the parcel with the 200 foot frontage.   In May, after having been given an extension of time under G. L. c. 41, § 81U, the planning

---

[3] The back land from the original thirty-acre parcel was contiguous to another parcel of roughly thirty acres owned by the Mercers which had frontage on another street and on which the Mercers had built a house and stable.

board approved the subdivision plan. The Arrigos appealed from that decision under G. L. c. 41, § 81BB.

There is no basis for the Mercers' contention that the judge erred when he reversed the decision of the board of appeals granting a variance. The judge found that there were no conditions especially affecting the land in question, see *McCabe* v. *Zoning Bd. of Appeals of Arlington*, 10 Mass. App. Ct. 811 (1980), and that any hardship was purely financial and was of the Mercers' own making. The applicable principles are illustrated by *Warren* v. *Zoning Board of Appeals of Amherst*, 383 Mass. 1, 9-13 (1981), and *Raia* v. *Board of Appeals of No. Reading*, 4 Mass. App. Ct. 318, 321-322 (1976). The Mercers urge that the deviation from the required frontage, 6.68 percent, was de minimis, but the frontage deviation in the *Warren* case was only two percent and the variance granted by the board was nevertheless annulled. As all the conditions for a variance set out in G. L. c. 40A, § 10, were not met, the judge correctly annulled the decision of the board of appeals. *Atherton* v. *Board of Appeals of Bourne*, 334 Mass. 451, 454 (1956).

The approval of the subdivision plan by the planning board presents a more difficult question. The chairman of the planning board testified that he and the other members were concerned that if the Mercers were precluded from making two large house lots utilizing the 386 foot frontage they might find it worth their while to put in a road which, given the relatively small 40,000 square foot area requirement of the zoning by-law, could "conservatively" support six to eight house lots. The area was rural in character; a denser development, the board felt, would not be in the best interest of the public. Therefore, the chairman testified, they decided to "waive" the 200 foot frontage requirement in accordance with the authority given them by G. L. c. 41, § 81R.

Section 81R, inserted by St. 1953, c. 674, § 7, authorizes a planning board "in any particular case, where such action is in the public interest and not inconsistent with the intent

and purpose of the [S]ubdivision [C]ontrol [L]aw, [to] waive strict compliance with its rules and regulations and with the frontage or access requirements specified in said law . . . ." See *Lyman* v. *Planning Bd. of Winchester*, 352 Mass. 209, 213-214 (1967); *Caruso* v. *Planning Bd. of Revere*, 354 Mass. 569, 572 (1968); *Wheatley* v. *Planning Bd. of Hingham*, 7 Mass. App. Ct. 435, 437-448 (1979). The words "said law" appear to refer to the Subdivision Control Law; but the reference is not entirely clear, because it is not readily apparent that the Subdivision Control Law imposes any frontage requirement on lots in a subdivision. It *defines* the word "subdivision" in a manner that excludes divisions of land in which each of the resulting parcels has frontage on a way of the requisite length for buildability under the applicable zoning ordinance or by-law, or, in the absence of such a frontage requirement, twenty feet. G. L. c. 41, § 81L, "Subdivision."[4] It might reasonably be contended that, where one or more of the lots shown on a plan lacks the frontage specified in the definition, the sole effect is to subject the plan to the requirement of approval as a "subdivision." It is clear that such an approval may not generally be withheld unless the plan violates one or more of the rules and regulations adopted by the planning board under G. L. c. 41, § 81Q (see G. L. c. 41, § 81M; *Canter* v. *Planning Bd. of Westborough*, 4 Mass. App. Ct. 306, 308 [1976]); and those rules and regulations may not impose a frontage requirement independent of that required by the zoning by-law. "Except in so far as it may require compliance with the requirements of existing zoning ordinances or by-laws, no rule or regulation [of the planning board] shall relate to the size, shape, width, frontage or use of lots

---

[4] A plan which falls within the exclusion is entitled, under § 81P, to the endorsement "approval not required," despite the fact that the lots shown thereon do not qualify as buildable lots under the zoning ordinance or by-law and despite the fact that the plan does not comply with planning board regulations with reference to access and availability of services. *Smalley* v. *Planning Bd. of Harwich*, 10 Mass. App. Ct. 599, 603-604 (1980).

within a subdivision, or to the buildings which may be constructed thereon." G. L. c. 41, § 81Q, as appearing in St. 1953, c. 674, § 7. See *McCarthy* v. *Board of Appeals of Ashland*, 354 Mass. 660, 662 (1968). Following this line of reasoning, we would have to conclude that the plan submitted by the Mercers was entitled as matter of law to the approval it received from the board, because it has not been shown that the board had a rule or regulation requiring compliance with the frontage requirement of the zoning by-law and no other violation of the board's rules and regulations has been suggested.

The plaintiffs take a diametrically opposite view. They read "frontage . . . requirements specified in said law" to refer to the twenty-foot minimum specified in the § 81L definition of "subdivision." They argue that, where the town has adopted a frontage requirement as part of its zoning by-law, the planning board has no power to waive the specified frontage, as it is a requirement not of the Subdivision Control Law but of the zoning by-law. This reading would have the anomalous practical result of precluding a planning board from waiving strict compliance with very large frontage requirements, such as the 200-foot requirement here, while enabling it to waive the rather miniscule twenty-foot requirement which is arguably the minimum required for adequate access by fire trucks and other large vehicles. But any other conclusion, the plaintiffs argue, would be tantamount to giving the planning board the power to grant a variance, a power reserved to the board of appeals under G. L. c. 40A, § 10.

The correct position, in our view, lies between those extremes. We read § 81L not merely as defining a subdivision but, in addition, as imposing a substantive requirement that each building lot shown thereon have frontage on a way for the distance specified in the zoning by-law or, failing such specification, twenty feet. The requirement that each lot have frontage thus does not depend on a provision to that effect in the rules and regulations of the planning board; the language quoted above from § 81Q is to be read merely as

precluding a planning board from imposing frontage re-
quirements independent of and more stringent than those of
the zoning by-law. By this reading the Mercers' plan was
not entitled to approval as matter of law because, although
it may have complied with the planning board's rules and
regulations, it did not comply with the frontage require-
ment of the Subdivision Control Law: namely, that speci-
fied in the zoning by-law. The portion of § 81U quoted in
*Canter* v. *Planning Bd. of Westborough,* 4 Mass. App. Ct.
at 308, indicates that disapproval of the plan may be based
not only on noncompliance with the rules or regulations of
the planning board or the recommendations of the board of
health but also on noncompliance with any requirement of
the Subdivision Control Law itself.[5] In keeping with that
view, § 81R is to be read as giving the planning board the
power to waive strict compliance with the frontage require-
ment of § 81L, whether that be the frontage specified in the
zoning by-law or the twenty-foot minimum applicable
where the zoning by-law is silent on the subject.

It does not follow that the planning board is authorized,
under that interpretation, to grant a variance. The cases
are legion which recognize that a § 81P endorsement of a
plan ("approval not required") gives a lot shown on that
plan no standing under the zoning by-law. See *Smalley* v.
*Planning Bd. of Harwich,* 10 Mass. App. Ct. 599, 603
(1980), and cases cited. We think that the same principle
should apply to plans bearing an endorsement of approval
under § 81U. There is no sound reason why the ap-
proval of a plan under the Subdivision Control Law, which
may be based on nothing more substantial than neglect
by a planning board to attend to its duties on time (see, e.g.,
*Kay-Vee Realty Co.* v. *Town Clerk of Ludlow,* 355

---

[5] That paragraph, as appearing in St. 1972, c. 749, § 2, provides in rele-
vant part: "[T]he planning board shall approve, or, if such plan does not
comply with the subdivision control law or the rules and regulations of
the planning board or the recommendation of the health board or officer,
shall modify and approve or shall disapprove such plan."

Mass. 165, 168 [1969]), should preclude a building inspector or board of appeals from performing their statutory duties of requiring adherence to the town's zoning by-law, including any provision specifying minimum frontage, as a condition of buildability. An approval under the Subdivision Control Law has an entirely different significance, entitling the approved plan to recordation (see G. L. c. 41, § 81X; *Smalley* v. *Planning Bd. of Harwich*, 10 Mass. App. Ct. at 602-603), and thus, in turn, affecting marketability of the lots shown on the plan.

In short, then, persons in the position of the Mercers, seeking to make two building lots from a parcel lacking adequate frontage, are required to obtain two independent approvals: one from the planning board, which may in its discretion waive the frontage requirement under the criteria for waiver set out in G. L. c. 41, § 81R, and one from the board of appeals, which may vary the frontage requirement only under the highly restrictive criteria of G. L. c. 40A, § 10. The approvals serve different purposes, one to give marketability to the lots through recordation, the other to enable the lots to be built upon. The action of neither board should, in our view, bind the other, particularly as their actions are based on different statutory criteria.

The criteria for waiver set out in § 81R are that "such action [be] in the public interest and not inconsistent with the intent and purpose of the [S]ubdivision [C]ontrol [L]aw." The judge ruled correctly that the board was not required to make findings in support of its determinations. *Wheatley* v. *Planning Bd. of Hingham*, 7 Mass. App. Ct. at 439 n.8. But he concluded that neither criterion was met and annulled the decision. The Mercers and the board challenge the correctness of that conclusion. Its basis, as articulated by the judge,[6] is open to two interpretations: one, that the judge

---

[6] "What occurred here . . . was to bail out Mercer who in the process of selling off several parcels at the locus had boxed himself into having a remaining parcel with a frontage of 386 feet. Such a bailing out is clearly not in the public interest and is plainly contrary to the intent and purpose of G. L. c. 41."

made an independent evaluation that the subdivision was not in the public interest and was contrary to the intent and purpose of c. 41 and substituted his determination for that of the board; or, two, that the motive of the board in granting the waiver was not to further the public interest and the intent and purpose of c. 41 but was instead to "bail out" the Mercers.

If consonance with "the public interest" is a justiciable standard (see *Casa Loma, Inc.* v. *Alcoholic Beverages Control Commn.*, 377 Mass. 231, 235 [1979]; *Dubois* v. *Selectmen of Dartmouth*, 2 Mass. App. Ct. 674, 677-678 [1974], and cases cited), it is obviously one that involves a large measure of judgment or discretion. If, in a given case, it is one as to which reasonable minds might in good faith differ, without doubting the reasonableness of the opposing view, the conclusion reached by the planning board should be sustained on judicial review. For it is the board, not the court, to whom the statute delegates the discretion, and the role of the court is merely to ascertain whether the board exceeded its authority.

The same is true to some extent of the concept of consistency with the intent and purpose of the Subdivision Control Law, although in considering this standard judicial review can be more exacting because the standard is more definite. An analogous standard appears in the law of variances, grants of which are subject to the statutory requirement that they not derogate substantially from the intent and purpose of the applicable zoning ordinance or by-law. Commonly variances do not founder on that ground alone,[7] and the cases discussing the concept of substantial derogation emphasize that some deviation from the literal requirements of the zoning ordinance or by-law is obviously contemplated by a statute that authorizes variances. *Cavanaugh* v. *DiFlumera*, 9 Mass. App. Ct. 396, 400 (1980). The derogation must be substantial before a variance will be struck down on that ground. *Id.*

---

[7] An exception was *Planning Bd. of Framingham* v. *Board of Appeals of Framingham*, 5 Mass. App. Ct. 789 (1977).

Because the Mercers' variance failed to survive the more often fatal test that it be based on substantial hardship arising from conditions specially affecting the land, we were not required in this case to decide whether a fourteen foot deviation from a two hundred foot frontage requirement, not being de minimis, could reasonably be regarded by the board of appeals as an insubstantial derogation from the purpose and intent of the zoning by-law. But we are required to decide the quite different and much easier question whether the planning board exceeded its authority in concluding that such a deviation would not be inconsistent with the purpose and intent of the Subdivision Control Law. The question is easier, because the primary significance of frontage for purposes of the Subdivision Control Law is to ensure access to vehicular traffic and the availability of utilities and municipal services to lots in the subdivision. See G. L. c. 41, § 81M. Concern under the Subdivision Control Law arises from frontages too narrow to permit easy access or from frontages connected to the lots they serve by necks too narrow or winding to permit easy access. See *Gifford* v. *Planning Bd. of Nantucket,* 376 Mass. 801, 807-809 (1978). Frontage as a factor in controlling density of development or in preserving the character of a neighborhood is more appropriately a concern of zoning, although, for consistency of regulatory purpose, a planning board may adopt a regulation requiring, as a condition of approval, that lots shown on a subdivision plan comply with the provisions of the applicable zoning by-law. G. L. c. 41, § 81Q. Significantly the record before us does not disclose whether the planning board has adopted such a regulation. The burden of proving that the board has exceeded its authority lies, of course, with the plaintiffs. *Selectmen of Ayer* v. *Planning Bd. of Ayer,* 3 Mass. App. Ct. 545, 548 (1975).

The two lots shown on the Mercers' subdivision plan have long frontages on an established public way. Both lots are roughly rectangular, and no potential problems concerning access or the provision of municipal services or utilities have

been suggested. In these circumstances we do not think it can be said that the planning board exceeded its authority in concluding that the fourteen foot frontage deviation would not be inconsistent with the intent and purpose of the Subdivision Control Law.

We turn finally to the doubt which may have been suggested as to the board's motivation (see note 6, *supra*). Here we assume, without deciding, that the board's approval of the subdivision plan would have to be annulled if it were shown that the approval was actuated by improper motives of the members of the board, such as a motive to do favors for friends, heedless of the consequences to the public. But if a proper motive is essential to the regularity of the official act, it follows from the presumption of regularity that the motive must be assumed to be proper until the contrary is shown. See *Foster from Gloucester, Inc.* v. *City Council of Gloucester*, 10 Mass. App. Ct. 284, 293-294 (1980). "It cannot be presumed that the [approval] was [given] solely in the interest of a single owner without regard to the broad public interests involved in the whole subject." *Ayer* v. *Commissioners on Height of Bldgs.*, 242 Mass. 30, 35 (1922). The evidence in this case contained not a hint or suggestion of impropriety. If the chairman's testimony concerning the board's reason is disbelieved despite its surficial plausibility, there is no other evidence from which the board's motives can be ascertained. To whatever extent subjective motivation may be relevant, the burden would be on the plaintiff to show the impropriety. *Wheatley* v. *Planning Bd. of Hingham*, 7 Mass. App. Ct. at 448.

We hold, therefore, that the planning board's waiver of strict compliance with the two hundred foot frontage requirement was valid for purposes of the Subdivision Control Law, and that its decision approving the Mercers' subdivision plan was not in excess of its authority.

In case No. 120206, the judgment is affirmed. In case No. 121458, the judgment is reversed, and a new judgment is to enter declaring that the decision of the planning board was not in excess of its authority and is affirmed.

*So ordered.*