SMI Investors (Delaware), Inc. *v.* Planning Board of Tisbury.

SMI Investors (Delaware), Inc. *vs.* Planning
Board of Tisbury.
(and two companion cases [1]).

Dukes County. June 7, 1984. — July 30, 1984.

Present: Greaney, C.J., Grant, & Armstrong, JJ.

*Subdivision Control,* Approval not required, Zoning requirements. *Zoning,*
   Multiple dwelling, Special permit. *Administrative Law,* Exhaustion of
   remedies. *Declaratory Relief.*

Where approval of a subdivision plan by a town planning board was expressly
   made subject to a condition that only detached dwelling units would be
   erected on the lots in the subdivision, the owner of the property in
   question was not entitled to have the board indorse "approval under the
   subdivision law not required" pursuant to G. L. c. 41, § 81P, on a later
   plan for the subdivision showing the same roads but altered lot lines
   and also showing that the lots were designed to serve multi-family
   dwellings. [411-413]
Although construction of multi-family housing on lots designated on a sub-
   division plan required both a special permit from the town's board of
   appeals and approval by the planning board, favorable action by the
   planning board was not a condition precedent to the grant of a special
   permit by the board of appeals. [413-414]
There was no actual controversy between a municipal board of health and a
   plaintiff proposing a subdivision plan with multi-family structures, and
   thus the plaintiff was not entitled to a determination of the validity of
   a regulation of the board permitting only two septic systems on one lot
   and limiting to two the number of dwelling units served by one septic
   system, where approval of the subdivision plan by the planning board
   was required, where the plaintiff's entitlement to special permits for
   multi-family housing, which the board of appeals had denied, was yet
   to be litigated, and where the board of health asserted that another of
   its regulations gave it discretion to permit septic systems serving more
   than four dwellings on a lot. [414-416]

---

   [1] The same plaintiff brought all three actions. The defendants in the other
two actions are the board of appeals of Tisbury and the board of health of
Tisbury. Mink Meadows Association, Inc., an abutter, is an intervener in
the action against the board of appeals.

CIVIL ACTIONS commenced in the Superior Court Department on November 30, 1980, April 30, 1981, and July 17, 1981, respectively.

The cases were heard by *Adams, J.*, on motions for summary judgment and a motion to dismiss.

*Kevin F. Moloney* (*Bernard A. Dwork* with him) for the plaintiff.

*Carmen L. Durso* for the defendants.

*Christopher S. Pitt* (*Douglas A. Randall* with him) for the intervener.

ARMSTRONG, J. In 1973 the plaintiff's predecessors in title (the Chiras) were granted a special permit by the Tisbury board of appeals to develop their 107-acre tract bordering on Lake Tashmoo as a cluster development. The planning board disapproved the subdivision plan, however, on the ground that the proposed 150-dwelling unit development exceeded the density requirement of a 1973 amendment to the zoning by-law (50,000 square feet per lot). Litigation followed, as a result of which a judge of the Superior Court ruled, in favor of the Chiras, that the applicable density requirement was that in effect before the 1973 amendment (25,000 square feet per lot) and, in favor of various abutters, that the zoning by-law prohibited multi-family structures. The grant of the special permit for cluster development was thus conditioned on a requirement that the dwelling units be detached but was otherwise upheld; and the planning board was ordered to reconsider the subdivision plan.[2] In October, 1975, the planning board approved the plan with a notation stating: "All building units will be detached as covenanted"; and a covenant to that effect was executed by the Chiras and the board. With legal obstacles cleared, practical difficulties apparently ensued, and the present plaintiff, holder of a mortgage on the Chiras' tract, came into ownership of the property through foreclosure.

In September, 1980, the plaintiff filed with the board of appeals an application for a special permit to construct multi-

---

[2] The judge's rulings were affirmed in *Chira* v. *Planning Bd. of Tisbury*, 3 Mass. App. Ct. 433 (1975).

family dwelling structures[3] on most of the land (approximately eighty acres) which had been the subject of the Chiras' proposed development. After hearing, the board of appeals voted to deny the permit for a variety of reasons having to do with the impact of the development, none of which needs to be recounted for purposes of the present appeals. In the spring of 1981, the plaintiff filed with the planning board a plan showing the proposed multi-family housing development and sought an endorsement that approval of the plan under the Subdivision Control Law was not required. See G. L. c. 41, § 81P. The planning board rejected the plaintiff's contention, which was (and is) that it had a right to the endorsement because the road system was identical to that shown in the plan approved in 1975 and differed from the earlier plan only in the arrangement of lot lines. See G. L. c. 41, § 81O.[4]

Three actions ensued: first, an appeal under G. L. c. 40A, § 17, from the denial of the permit by the board of appeals; second, an appeal under G. L. c. 41, § 81BB, from the planning board's refusal to give the approval-not-required endorsement; and, third, an action against the board of health for a declaration that a regulation of that board purporting to limit septic systems to two per lot, with a maximum of two dwelling units per septic system, is invalid and unconstitutional. The three municipal defendants moved for, and were granted, summary judgments, and the cases come before us on the plaintiff's appeals.

---

[3] The earlier Superior Court decision had ruled that a variance was required for multi-family structures. The zoning by-law governing the 1980 application appears to treat multi-family structures as a specially permitted use in the residential district where the tract lies.

[4] Section 81O, as amended by St. 1963, c. 804, in relevant part, provided that "[a]fter the approval of a plan the location and width of ways shown thereon shall not be changed unless the plan is amended . . .; but the number, shape and size of the lots shown on a plan so approved may, from time to time, be changed without action by the board, provided every lot so changed still has frontage on a public way or way shown on a plan approved in accordance with the [S]ubdivision [C]ontrol [L]aw of at least such distance, if any, as is then required by [the zoning by-law] . . . ."

## The Planning Board Case

The provision on which the plaintiff relies (relating to changes in the number, shape or size of lots on an approved plan), like the corresponding restriction applicable to planning board regulations (see § 81Q, eighth sentence[5], as appearing in St. 1953, c. 674, § 7), serves to confine the scope of planning boards' discretion to prevent their intruding into the sphere of zoning. The restrictions are not woodenly applied, however, to preclude a planning board from taking cognizance of a lot layout which directly impinges on matters lying within the proper sphere of planning board regulation, such as means of access for vehicles and utilities. See, e.g., *Gifford* v. *Planning Bd. of Nantucket,* 376 Mass. 801 (1978); *Hrenchuk* v. *Planning Bd. of Walpole,* 8 Mass. App. Ct. 949 (1979). Compare *Gallitano* v. *Board of Survey & Planning of Waltham,* 10 Mass. App. Ct. 269, 273-274 (1980).

The endorsements of a planning board (whether an approval of a plan under § 81U or a notation that approval is not required under § 81P) are a prerequisite to recordability of the plan, § 81X, and hence, as a practical matter, to marketability of the lots shown thereon. See *Smalley* v. *Planning Bd. of Harwich,* 10 Mass. App. Ct. 599, 602-603 (1980); *Arrigo* v. *Planning Bd. of Franklin,* 12 Mass. App. Ct. 802, 808 (1981). The cases have supported the concept that, where a planning board knows its endorsement may tend to mislead buyers of lots shown on a plan, it is to exercise its powers in a way that protects persons who will rely on the endorsement. *Perry* v. *Planning Bd. of Nantucket,* 15 Mass. App. Ct. 144, 156 (1983). Thus, in *Bloom* v. *Planning Bd. of Brookline,* 346 Mass. 278, 283-284 (1963), it was held that a plan showing a division into two lots should have been treated as a subdivision if both lots had been proposed for building because one of the lots lacked the requisite frontage on a public way; but that the planning board had properly given its endorsement that ap-

---

[5] "Except in so far as it may require compliance with the requirements of existing zoning ordinances or by-laws, no rule or regulation shall relate to the size, shape, width, frontage, or use of lots within a subdivision, or to the buildings which may be constructed thereon . . . ."

proval was not required because the plan stated on its face that the deficient lot "[did] not conform with the [z]oning [b]y-[l]aw" (346 Mass. at 281). Compare *Smalley v. Planning Bd. of Harwich, supra* at 604-605. With *Smalley* contrast the *Bloom* case, *supra,* and *Perry* v. *Planning Bd. of Nantucket,* at 155-157.[6]

Here, the 1973 plan was approved subject to a condition that all dwellings erected on the lots shown thereon be detached. The imposition of that condition was not appealed, and its propriety is not now before us. Compare *Campanelli, Inc.* v. *Planning Bd. of Ipswich,* 358 Mass. 798 (1970); *Costanza & Bertolino, Inc.* v. *Planning Bd. of North Reading,* 360 Mass. 677, 681 (1971); *Marino* v. *Board of Appeal of Beverly,* 2 Mass. App. Ct. 859 (1974). The 1981 plan showed the same roads but altered lot lines. The plan also showed that the lots are designed to serve multi-family dwellings. The plaintiff asked the planning board to disregard the proposed use, but this it could not demand as of right. *Loring Hills Developers Trust* v. *Planning Bd. of Salem,* 374 Mass. 343, 351 (1978).

The application for the § 81P endorsement was necessarily predicated on the approval of the 1973 plan, which remained contingent on acceptance of the condition. As the 1981 plan does not contemplate compliance with the condition, it is, in effect, a new plan, necessitating independent approval. *Richard* v. *Planning Bd. of Acushnet,* 10 Mass. App. Ct. 216, 218 (1980). Compare *Goldman* v. *Planning Bd. of Burlington,* 347 Mass. 320, 324-325 (1964). We need not consider whether the plaintiff might have been entitled to a § 81P endorsement if each lot shown on the plan had been expressly made subject to the condition on the 1973 plan, in accordance with the holding in *Bloom* v. *Planning Bd. of Brookline, supra.* The record in the case before us makes clear that the plaintiff did not seek such a qualified endorsement and affirmatively sought multi-family dwellings as "the only way the investors would be able to recover their money."

---

[6] In the *Perry* case, the ruling of the trial judge reproduced at 155 n.9, and held erroneous, appears to have been based on the *Smalley* case.

It follows that the judge did not err in ruling that the planning board was correct in refusing the § 81P endorsement.

### The Board of Appeals Case

The judge did not deal with the several reasons given by the board of appeals for denying the plaintiff's application for a special permit to construct multi-family housing. He appears instead to have ruled, in accordance with the board's motion for summary judgment, that the special permit was properly refused because of the detached-dwelling condition imposed on the 1973 plan approval. The board's contention was based on G. L. c. 41, § 81Y, as appearing in St. 1953, c. 674, § 7, which, in relevant part, states:

> "In any . . . town in which the [S]ubdivision [C]ontrol [L]aw is in effect, the board or officer, if any, having the power and duty to issue permits for the erection of buildings shall not issue any permit for the erection of a building until first satisfied that the lot on which the building is to be erected is not within a subdivision, or that a way furnishing the access to such lot . . . is shown on a plan recorded or entitled to be recorded under [§ 81X], and that any condition endorsed thereon limiting the right to erect or maintain buildings on such lot have [*sic*] been satisfied, or waived by the planning board . . . ."

If the plaintiff's application were for building permits, § 81Y would preclude favorable action by either the building inspector or the board. See *Ellen M. Gifford Sheltering Home Corp.* v. *Board of Appeals of Wayland,* 349 Mass. 292, 294-295 (1965); *Planning Bd. of Easton* v. *Koenig,* 12 Mass. App. Ct. 1009 (1981). Here, the application is for a special permit, not a building permit: that is, it seeks a generalized approval for the construction of multi-family housing on the lots designated, which, if granted, must be followed by applications for the building permits for each approved building, showing detail sufficient to enable the building inspector to determine com-

pliance with applicable codes.[7] Before the building permit stage is reached, the plaintiff is in the position of needing approvals of two boards for its development: first, of the board of appeals, which has authority to issue special permits for multi-family dwellings; and, second, of the planning board, which has authority either to release the condition on the 1973 approved plan or to approve the 1981 plan. Compare *Arrigo* v. *Planning Bd. of Franklin,* 12 Mass. App. Ct. at 808. We are aware of no statutory requirement that the approval by one of those boards is a condition precedent to approval by the other. Contrast the relationship between the board of health and a planning board with respect to approval of a subdivision plan. *Loring Hills Developers Trust* v. *Planning Bd. of Salem,* 374 Mass. at 348. *Fairbairn* v. *Planning Bd. of Barnstable,* 5 Mass. App. Ct. 171, 173-174 (1977). The necessity for favorable planning board action would not invalidate the grant of a special permit by the board of appeals, despite the fact that, without the favorable action, the special permit might prove unavailing. Hence the ground on which the judge summarily affirmed the decision of the board of appeals was erroneous. The board of appeals case must be remanded to the Superior Court for review under G. L. c. 40A, § 17, of the reasons for disapproval stated by the board. See *Vazza Props., Inc.* v. *City Council of Woburn,* 1 Mass. App. Ct. 308, 312 (1973).

### The Board of Health Case

Because the plan submitted to the planning board for the endorsement, approval not required, envisioned large lots with many four-family structures, the plaintiff anticipated a problem with the regulation promulgated by the board of health generally limiting to four the number of dwelling units that can be served by the two permitted septic systems on one lot.[8] Thus it initiated

---

[7] Contrast the situation where a building inspector denies an application for a building permit on the sole ground that a special permit is required, and the applicant appeals to the special permit granting authority.

[8] "09.1.03 SUBSURFACE ON-LOT SEWAGE DISPOSAL

". . . .

"(4) *Maximum Systems — Areas Zoned for Residential Use.* Excepting elderly and low/moderate income housing and other similar arrangements

this action for declaratory relief to establish that the regulation was unconstitutional and invalid. Recognizing that declaratory relief is not afforded in the absence of an actual controversy, the plaintiff predicated the existence of such a controversy on two propositions: first that it was entitled as of right to the endorsement of the plan showing the lots and to the issuance of the special permits for multiple-family housing thereon; and, second, on an assertion that the regulation in issue left no discretion in the board of health to allow construction of septic systems to serve more than four dwellings on a lot.

We now know that the plaintiff is not entitled to endorsement of the plan establishing the lots; that its entitlement to the special permits denied by the board of appeals has yet to be litigated; and that the board of health asserts (at least in this litigation) that another of its regulations[9] gives it the discretion

---

devoted to public interest purposes, (which shall conform to the requirements and maximums set forth for business or commercial districts), there shall be no more than two (2) disposal works systems per lot and no more than two dwelling units connected to one disposal works system. This maximum restriction may be waived in whole or in part in areas where municipal sewers are available for connection at the lot line."

It is agreed in this case that the plaintiff's lots do not have sewer connections available at the lot lines.

[9]  "09.0.03 WAIVERS

"(1) State and federal statutes and town by-laws cannot be waived.
"(2) Under certain conditions, state codes and regulations may be modified or waived, with respect to selected specifics, by the cognizant state department. In health matters, usually the local Board of Health must request, or endorse, a waiver application.

"(3) Local regulations may be modified or waived, with respect to selected specifics, provided:

— a written application is made, and;
— the application fully described the locus . . . , describes clearly the waiver requested and why it is requested, and;
— the majority of the Board of Health, after consideration, or after public hearing and consideration, finds a waiver appropriate and consistent with general regulatory intent . . . ."

The argument of the plaintiff that the specific waiver provision of regulation 09.1.03(4) precludes application of the general waiver provisions of regulation 09.0.03(3) points up, at best, an ambiguity in the board's regulations. Normally, in the event of ambiguity, the promulgating agency will be allowed to interpret the meaning of its own regulations in the first instance.

in appropriate cases to permit septic facilities serving more than four dwellings on a lot. The board of health has not yet been asked to review or act with respect to any aspect of the plaintiff's development plans.

In the circumstances the judge was correct in ruling that no actual controversy exists at this point between the plaintiff and the board of health. The plaintiff's present position with respect to septic systems is such that, if a court were to entertain its action, any owner of a large tract of land, foreseeing a possibility that a board might deny him a permit, could proceed directly to court to establish that a denial would be unconstitutional, without first seeking favorable action from the board. "[Our courts have] long adhered to the principle that [they] should not resolve hypothetical issues." "This reluctance is heightened when the hypothetical question involves a constitutional dimension." *International Marathons, Inc.* v. *Attorney Gen.,* 392 Mass. 376, 379 & n.7 (1984). The action was properly dismissed.

In the planning board case, 82-1026, and the board of health case, 82-1020, the judgments are affirmed. In the board of appeals case, 82-1027, the judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

*Purity Supreme, Inc.* v. *Attorney Gen.,* 380 Mass. 762, 782 (1980). Thus, the attempt to secure relief in court before applying to the board for permission suggests the correctness of the judge's action under the doctrine of primary jurisdiction. See *Gallo* v. *Division of Water Pollution Control,* 374 Mass. 278, 290-292 (1978).