Volterra, J.
INTRODUCTION
Plaintiff Mitchell Adams (“Adams”), resides at 447 Westfield Street, Norfolk County, Massachusetts brought this action pursuant to G.L.c. 40A, §17 against the defendant James G. Brolly (“Brolly”), Trustee of Westfield Trust (“Trust”), who resides at 1467 Washington Street, Canton, Norfolk County, Massachusetts and the members of the Dedham Zoning Board of Appeals (“Board of Appeals”). Adams contends that the Board of Appeals exceeded its authority when it granted Brolly the variance and therefore seeks to annul the Board of Appeals decision.
FINDINGS OF FACT
In April 1985, Brolly acquired the property at 437 Westfield Street, Dedham, Norfolk County, Massachusetts (“Premises”). The Premises contained 9.99 acres as shown on “Plan of Land in Dedham, Mass.,” drawn by Pilling Engineering Company, Inc., dated July 10, 1975 and recorded with Norfolk County Registry of Deeds (“Registry of Deeds”). Brolly resided at the Premises from April, 1985 through August, 1992. On August 16, 1990, Brolly conveyed the Premises to the Trust by deed and recorded with the Registry of Deeds.
The property abutting the Premises to the west was owned by Alexander H. McNeil, Trustee (“McNeil”), and consists of lots numbered 26, 27, and 28 on the plan recorded at the Registry of Deeds.
On or about June 25, 1992, Brolly and McNeil filed two Form A Applications with the Town of Dedham Planning Board (“Planning Board”) requesting Approval Not Required Endorsements of a plan entitled “PLAN OF LAND IN DEDHAM, MASS" dated June 15, 1992, recorded in the Registry of Deeds.
*594 The intent of the two applications was to divide the Premises and the relevant portion of McNeil’s land into 4 parcels. Parcel 1 would contain 3.0412 acres and the existing single family residence known as and numbered 437 Westfield Street, Norfolk County, Massachusetts. The remainder of the original Premises and McNeil’s land were divided into Lot 2, containing 5.894 acres which includes the land area of McNeil’s Lot 30; Parcel B containing 2,444 Square feet of land; and, Parcel C containing 43,560 square feet of land.
Brolly and McNeil had an agreement whereby Brolly was to trade Parcels B and C to McNeil in exchange for Lot 30. This transfer would provide Brolly with the necessary 125 feet of frontage for lot 2 on Westfield Street. The intent of the land swap is further discussed in the Planning Board’s records.
On July 16, 1992 the Planning Board approved the ANR Endorsement Request relevant to McNeil’s Lot 30 and voted to reject the plan showing the Premises, but failed to record the action with the Town of Dedham, Town Clerk within 21 days of the filing of Brolly’s Form A Application. Therefore the Planning Board was deemed to have constructively approved said Plan pursuant to M.G.L.A. c.41, §81P.
Brolly recorded the plan with the Registry of Deeds as Plan.
On August 7, 1992 the Trust deeded Lot 1 to Teresa Tan by deed and recorded in the Norfolk County Registry of Deeds.
Brolly and McNeil failed to execute the land swap because McNeil was unable to clear the title to lot 30 of mortgage interests.
On or about March 3, 1993, Metropolitan District Commission (“MDC”) informed McNeil that a taking by eminent domain which included lot 30 was a possibility-
Subsequently, on or about April 27, 1993, Brolly filed an application with the Town of Dedham Zoning Board of Appeals (“Board of Appeals”) for a frontage variance from the provisions of the Zoning By-Laws of the Town of Dedham, Section VI-1 for Lot 2 in the amount of 26.46 feet, that being the frontage Lot 2 would have gained if the transfer with McNeil for Lot 30 had been completed.
On June 9, 1993 following proper notice and publication, the Board of Appeals held a hearing. At the hearing, abutters, neighbors and the Planning Board made certain objections.
On August 11, 1993 the Board of Appeals issued a written decision granting a frontage variance for Lot 2 as requested by Brolly and notified all interested parties.
Thereafter, Adams, as owner of 437 Westfield Street, Dedham, Norfolk, Massachusetts filed a timely complaint challenging the issuance of the variance by the Board of Appeals pursuant to M.G.L.A. C.40A, §17. Pursuant to that statute, Adams has standing and is an aggrieved person.
On or about Februaiy 10, 1994 the MDC took by eminent domain McNeil’s property, including Lot 30.
According to the minutes of the Board of Appeals hearing, Brolly intends to construct a single family residence for his personal use at the location he indicated to the Court on Wednesday, May 15, 1996 when the Court took a view.
Without the frontage variance and compliance with all other applicable building and zoning regulations construction of the proposed single family residence will not by allowed.
RULINGS OF .LAW
G.L.c. 40A, §10, authorizes a Board of Appeals to grant a variance only where it “specifically finds [a] that owing to circumstances relating to the soil conditions, shape, or topography of such land . . . and especially affecting such land . .. but not affecting generally the zoning district in which it is located, [b] a literal enforcement of the provisions of the . . . by-law would involve substantial hardship, financial or otherwise, to the petitioner or appellant, [c] . . . that desirable relief may be granted without substantial detriment to the public good and [d] without nullifying or substantially derogating from the intent or purpose of such ordinance or by-law.” On an appeal to the Superior Court under G.L.c. 40A, §17, the judge hears the matter de novo and determines the validity of the board’s decision on the basis of the facts found by the judge. See Kirkwood v. Board of Appeals of Rockport, 17 Mass.App.Ct. 423, 426-27 (1984), and cases therein cited. All statutory prerequisites set out in §10 must be met. Id. at 427-28.
It is well established that “(n]o person has a legal right to a variance and they are to be granted sparingly.” Damaskos v. Board of Appeal of Boston, 359 Mass. 55, 61 (1971), and cases therein cited. The test is not whether the variance is simply “desirable,” Martin v. Board of Appeals of Yarmouth, 20 Mass.App.Ct. 972, 973 (1985), but whether it is justified, that is, whether there is evidence to show that all the statutory prerequisites have been met. See Warren v. Zoning Bd. of Appeals of Amherst, 383 Mass. 1, 10 (1981); Dion v. Board of Appeals of Waltham, 344 Mass. 547, 555-56 (1962).[2]
When Brolly conveyed lot 1 to Teresa Tan, Brolly was fully aware that lot 2 would have less than the required 125 feet of frontage. Brolly, however, anticipating this fact had already arranged to trade parcel B and C of his property for lot 30 owned by his abutting neighbor McNeil. This trade would provide Brolly with the necessary 125 feet of frontage. It was not until Brolly learned that his plan was constructively approved by the Dedham Planning Board, did Brolly then *595 convey lot 1 to Teresa Tan thereby creating non-conforming lot 2.
Brolly’s plan, however, was undermined when he learned that the MDC intended to take lot 30 by eminent domain. It was only after learning this fact that Brolly needed and applied for the variance. In approving the variance, the Board of Appeals relied on Paulding v. Bruins, 18 Mass.App.Ct. 707, 710 (1984). In that case, the applicant’s property was a “pork chop lot [that] was created in its present form in the 1920’s as far as appears prior to the adoption by the town of any zoning by-law.” The court affirmed the variance based on evidence that the size of the lot exceeded that of most surrounding lots by a significant amount, that the existing topography would accommodate the driveway from the public way to the main portion of the lot, that the lot could be sold only if the variance were granted and that the lot would be unbuildable without the variance. Id. at 710.
Adams attempts to distinguish the facts of this case from Paulding and recites a line of cases in which the courts have determined that the landowner was unable to demonstrate a “hardship” within the meaning of G.L.c. 40A, §10 in instances where the landowner subdivided land and created non-conforming lots according to the existing zoning by-law. Warren v. Zoning Bd. of Appeals of Amherst, 383 Mass. 1, 10 (1981) (finding no “hardship” where the owner of a larger tract of land conveyed to a new owner a portion thereof which did not meet the minimum frontage requirements of the then existing zoning requirements and as a result could not build without relief from the zoning regulations); Raia v. Board of Appeals of N. Reading, 4 Mass.App.Ct. 318, 321-22 (1976) (same); Arrigo v. Planning Bd. of Franklin, 12 Mass.App.Ct. 802, 803-04 (1981) (same); Gordon v. Zoning Bd. of Appeals of Lee, 22 Mass.App.Ct. 343, 350-31 (1986) (no “hardship” where the owner conveyed tracts of land thereby creating a portion of land which did not meet the minimum frontage requirements).
In Warren, the court annulled the board’s decision granting a variance to the purchaser of the smaller parcel. In so doing, the court elaborated that: “The creation of a non-conforming lot, without more, does not entitle the purchaser to a variance.” Warren, supra at 13.
Similarly in Gordon, the applicant seeking the variance to allow the construction of a single family dwelling and garage on land of some five acres with less than the minimum 125 feet frontage on a public way required by a zoning by-law did not prevail on his claim that compliance with the frontage requirement would compel an uneconomic use of the land “since the land could not be sold without a variance.” Gordon, supra at 350. The court relying on the principal enunciated in Warren found nothing in the record that constituted “more” and held that any hardship to the applicant or to his prospective purchaser was the result of the applicant’s previous conveyance, with knowledge of the zoning requirements and knowledge that he would be unable to meet the zoning minimum of 125 feet of frontage. Gordon, supra at 350.
Justice Cutter dissenting from the court, however, found a good deal “more” in the way of support for a variance in that case even though the applicant himself created the non-conforming lot. Gordon, supra at 355. Specifically, Justice Cutter found that the unfavorable physical characteristics of the locus, and the unintended circumstances leading to the grant of the variance provided the required additional reasons for a variance to satisfy the principle in Warren, supra at 13 (emphasis added). In his dissent, Justice Cutter opined that the emphasized words “without more” suggest that the principle in fact applied in the Warren case is not to be regarded as inflexible for all time merely because a present or former owner once possessed enough street frontage to satisfy the zoning by-law. Gordon, supra at 355.
Similarly in the instant case, I find a good deal “more” existed to support the board’s decision to grant Brolly the variance despite the fact that Brolly himself created the non-conforming lot. The board specifically found that Brolly has approximately 80% of the required frontage, that the square footage area is in far excess of what is required by Section VI-1 of the zoning by-law, that Brolly would suffer a hardship if he were not allowed to build since a substantial amount of taxes are being paid on the extraordinarily large lot, and that the traffic level would not be substantially increased. In addition to the board’s decision, I find that the size of the lot did in fact exceed that of most surrounding lots by a significant amount. Brolly in the meantime has and continues to pay taxes on the land. Without the variance, the lot will remain undeveloped and useless creating a substantial hardship on the locus.
While it was Brolly who created the non-conforming lot, he unlike the applicants in Warren, Gordon, Raia, and Arrigo did not create the lot in anticipation of being granted a variance. See Bruzzese v. Board of Appeals of Hingham, 343 Mass. 421, 423 (1962),[3] cf. Gordon, supra at 350 (any hardship to the applicant or to his prospective purchaser was the result of the applicant’s previous conveyance, with knowledge of the zoning requirement). Moreover, Brolly did not subdivide his lot in an effort to achieve greater financial gain. Paulding, supra at 711. Here, the MDC’s decision to take lot 30 by eminent domain created an unintended circumstance that formed the basis for Brolly’s request and provided the required additional reason for a variance to satisfy the principal in Warner, supra at 13. Gordon, supra at 355. This fact in conjunction with the reasons set forth by the board, provided the “more” to support the board’s required finding of substantial hardship. Paulding, supra at 712.
*596 Based on all the evidence, I find the lot involved has significant characteristics beyond the lack of conformity with the zoning requirements, and Brolly would suffer substantial hardship. Therefore, I find that the board did not exceed its authority in granting Brolly the variance.
ORDER
For the foregoing reasons, it is hereby ORDERED that the zoning board of appeals’ decision to grant Brolly the variance is AFFIRMED.

The Zoning Act, G.L.c. 40A, requires in §10 that if the board grants a variance it must “specifically find” the facts which constitute the prerequisites therefor, and it requires in §15 that the board “shall cause to be made a detailed record of its proceedings . . . setting forth clearly the reason or reasons for its decision and of its official actions . . This requirement for specific findings and a detailed record of the board’s proceedings and the reason or reasons for its decision “is not satisfied by a mere repetition of the statutory words. Warren, supra at 10, citing Brackett v. Board of Appeal of the Building Dept. of Boston, 311 Mass. 52, 54 (1942). The decision of the board is invalid on its face if ”[t]he board did not make the explicit findings which are prerequisite to the granting of a variance and which, as we have often said, are not supplied by a bare recital of the statutory conditions essential to the granting of a variance." Warren, supra at 10 citing McNeely v. Board of Appeal of Boston, 358 Mass. 94, 103 (1970).

In that case, the landowner had a single conforming house lot which had on it a single family dwelling. The zoning board of appeals denied his request for a variance to divide the single conforming lot into two house lots, neither of which would comply with the zoning by-law. In upholding the denial of the variance, the court stated, “We may infer that it would be of greater advantage to him if he were permitted to erect a second house on this lot. However, we do not construe the words ‘financial or otherwise’ in the statute to mean that a deprivation of potential advantage constitutes a ‘substantial hardship.’ ’’ Bruzzesse, supra at 424.