EDITH S. BLOOM & others *vs.* PLANNING BOARD OF BROOKLINE & others.

Norfolk.    May 9, 1963. — July 1, 1963.

Present: WILKINS, C.J., WHITTEMORE, CUTTER, SPIEGEL, & REARDON, JJ.

*Subdivision Control.   Equity Pleading and Practice,* Amendment.   *Words,* "Lot."

The word "lot" as employed in the definition of "subdivision" in G. L. c. 41, § 81L, means an area of land "used, or available for use, as the site of one or more buildings."   [283]

A division on a plan of a tract of land fronting on a public way into two lots, of which one, Lot A, had, and the other, Lot B, did not have, the frontage required by the town's zoning by-law for a building lot, did not constitute a "subdivision" within the subdivision control law, G. L. c. 41, §§ 81K–81GG, where the landowner submitted the plan to the chairman of the planning board, who indorsed on it, under § 81P, "approval under subdivision control law not required.   Lot B does not conform with the zoning by-law," and the landowner then recorded the plan and secured the issuance of a building permit for a building on Lot A, notwithstanding that the plan was entitled "Subdivision Plan," that no notice of submission was given to the town clerk as required by § 81T, and that the plan was not submitted to the board by its chairman: the landowner recorded the plan and acted under it on the basis, in effect, that use of Lot B for building was precluded.   [283–284]

A judge, in passing upon a motion to amend a bill in equity to which a demurrer had been sustained, was entitled to regard the allegations of the original bill and of the other pleadings.   [284–285]

BILL IN EQUITY filed in the Superior Court on June 19, 1962.

Demurrers to the bill were sustained by *Tauro,* J., a motion to amend the bill was denied by *Fairhurst,* J., and final decrees dismissing the bill were entered by *Sullivan,* J.

*Jack H. Backman* for the plaintiffs.

*Lewis H. Weinstein* (*Lawrence A. Sullivan* with him) for Lawrence & others; *Phillip Cowin,* Town Counsel, for the Planning Board of Brookline & others, also with him.

Bloom *v.* Planning Board of Brookline.

WHITTEMORE, J.   This is a bill of complaint brought in the Superior Court on June 19, 1962, by more than ten taxable inhabitants of Brookline under G. L. c. 41, § 81Y, to nullify an indorsement on a recorded plan, revoke building permits, and enjoin the erection of buildings.   The defendants are (a) the planning board of Brookline (the board) and a former member who was the chairman in 1962, (b) the building commissioner and William C. Berghaus, a building inspector, (c) James Lawrence, Jr., and his two cotrustees under a will, as the owners of the land, and (d) a corporation and Albert C. Waters, Jr., its employee or agent, who, with Lawrence, are proposing to build.   The plaintiffs have appealed from interlocutory decrees which sustained the demurrers of all the defendants, from the interlocutory decree which denied a motion to amend the bill and denied leave further to amend, and from the final decrees which dismissed the bill as to all the defendants.

The case was heard in the Superior Court with an appeal under G. L. c. 40A, § 21 (*Kolodny* v. *Board of Appeals of Brookline, post,* 285), and a petition for a writ of mandamus (*Kolodny* v. *Building Commr. of Brookline, post,* 289) with allegations based on the same underlying facts.   Facts summarized in the following paragraphs are set out in pleadings or proposed pleadings in one or another of the three cases.

Owners of a parcel of land lying between Grove and Newton streets, Brookline, early in 1962 sought, and were refused, a variance to enable them to build an apartment house complex on the parcel notwithstanding that it extended more than twenty-five feet into a single residence district.[1]   Thereafter a plan was prepared entitled "Subdivision Plan of Land in Brookline . . . March 16, 1962."   The plan (see simplification reproduced herewith)[2] shows a

---

[1] Art. I, § 3 (b): "When a boundary line between districts divides a lot in single ownership, the regulations controlling the less restricted portion of such lot shall be applicable to the entire lot, provided such lot does not extend more than 25 feet within the more restricted district" (Brookline zoning by-law).

[2] Although the plan is not set out in any pleading, the parties at argument submitted a copy for our use.

large "Lot A" with its southwesterly boundary 24.5 feet southwesterly of a zone boundary and, adjacent to the southwesterly boundary, a small parcel entitled "Lot B"

with an area of 3,052 square feet and a frontage of 34.38 feet on Grove Street.

   Lawrence, on March 19, 1962, "exhibited" the plan to the chairman of the board, who did not submit it to the board

but indorsed it: "Brookline Planning Board, Date March 19, 1962, approval under Subdivision Control Law not required. Lot B does not conform with the Zoning By-Law. Russell Hastings, Chairman." The plan was recorded at the Norfolk registry of deeds, March 19, 1962.

On March 27, 1962, the inspector, Berghaus, approved applications for, and issued, thirteen permits for buildings on lot A. Lawrence had not notified the town clerk of the submission of the plan as required by G. L. c. 41, § 81T, as amended through St. 1960, c. 266, § 1.[3] On May 22, 1962, a new zoning by-law was adopted, pursuant to a planning board hearing of which notice was given on March 29, 1962. G. L. c. 40A, § 11.[4]

The bill in this case alleges a proposal to build an apartment house complex on a "parcel of land" under the permits which are "predicated upon a . . . subdivision." It sets out the indorsement on the plan and alleges the failure to submit the plan to the board and to notify the town clerk, and that no notice of public hearing had been advertised or given and no hearing held. It alleges that the building inspector approved the applications for permits "without power or authority"; and that the proposed builders acted without authority from the owners.

The proposed substitute bill sets out in substance, inter alia, that (a) the building commissioner and the inspector knew that the permits were for the erection of buildings within a subdivision under an unapproved plan and (b) "one of said lots, as sub-divided, has only 34.38 feet frontage on a way," although the frontage required by the zoning by-law "for erection of a building on said lot is 40 feet."

Section 81Y provides in its fourth paragraph: "The superior court for the county in which the land affected by

---

[3] "Every person submitting a definitive plan of land to the planning board of a city or town for its approval or for a determination that approval is not required shall give written notice to the clerk of such city or town by delivery or by registered mail, postage prepaid, that he has submitted such a plan."

[4] "[N]o . . . amendment . . . shall affect any permit issued . . . before notice of hearing before the planning board . . . ."

any of the provisions of the subdivision control law lies shall have jurisdiction in equity on petition of the planning board of a city or town, or of ten taxable inhabitants thereof, to review any action of any municipal board or officer of such city or town in disregard of the provisions of this section and to annul and enjoin such action, to enjoin the erection of a building in violation of this section, and otherwise to enforce the provisions of the subdivision control law and any rules or regulations lawfully adopted and conditions on the approval of a plan lawfully imposed thereunder, and may restrain by injunction violations thereof or make such decrees as justice and equity may require. No proceeding under this paragraph shall be instituted more than one year after the act or failure to act upon which such petition is based.''

The bill is cast primarily with reference to the following requirement of the second paragraph of § 81Y: ''In any city or town in which the subdivision control law is in effect, the board or officer, if any, having the power and duty to issue permits for the erection of buildings shall not issue any permit for the erection of a building until first satisfied that the lot on which the building is to be erected is not within a subdivision, or that a way furnishing the access to such lot as required by the subdivision control law is shown on a plan recorded or entitled to be recorded under section eighty-one X, and that any condition endorsed thereon limiting the right to erect or maintain buildings on such lot have been satisfied, or waived by the planning board . . . .''

The indorsement was undoubtedly placed on the plan pursuant to § 81P, as amended through St. 1961, c. 332.[5]

---

[5] ''Any person wishing to cause to be recorded a plan of land situated in a city or town in which the subdivision control law is in effect, who believes that his plan does not require approval under the subdivision control law, may submit his plan to the planning board of such city or town, in the manner prescribed in section eighty-one T, and, if the board finds that the plan does not require such approval, it shall, without a public hearing and without unnecessary delay endorse thereon or cause to be endorsed thereon by a person authorized by it the words 'approval under the subdivision control law not required' or words of similar import with appropriate name or names signed thereto, and such endorsement shall be conclusive on all persons. Such endorsement shall not be withheld unless such plan shows a subdivision. If the board shall determine that in its opinion the plan requires approval, it shall

Section 81L defines "lot" as "an area of land in one ownership, with definite boundaries, used, or available for use, as the site of one or more buildings." The definition of "subdivision" includes: "the division of a tract of land into two or more lots . . . [but not if] every lot within the tract . . . has frontage on (a) a public way . . . . Such frontage shall be of at least such distance as is then required by zoning or other ordinance or by-law, if any . . . for erection of a building on such lot . . . [otherwise] twenty feet."

1. We assume that under § 81Y a bill to correct or expunge an indorsement on a recorded plan could be maintained in some circumstances and that this is not affected by the right given by § 81BB to those aggrieved to appeal within twenty days from a decision of the board or its failure to take final action on a plan. The plaintiffs, however, do not show or suggest that there is in this case any substantive ground for such relief.

The allegations show that, notwithstanding the title of the recorded plan, "subdivision," there has been no subdivision within the subdivision control law. We construe "lot" for purposes of the definition of "subdivision" in § 81L in the terms of the definition of "lot," that is, an area "used, or available for use, as the site of one or more buildings." If the owners had proposed lot B as a lot for building, notwithstanding its deficiencies, the division of

---

give written notice of its determination to the clerk of the city or town and the person submitting the plan, and such person may submit his plan for approval as provided by law and the rules and regulations of the board, or he may appeal from the determination of the board in the manner provided in section eighty-one BB. If the board fails to act upon a plan submitted under this section within fourteen days after its submission, it shall be deemed to have determined that approval under the subdivision control law is not required, and it shall forthwith make such endorsement on said plan, and on its failure to do so forthwith the city or town clerk shall issue a certificate to the same effect. The plan bearing such endorsement or the plan and such certificate, as the case may be, shall be delivered by the planning board, or in case of the certificate, by the city or town clerk, to the person submitting such plan. The planning board of a city or town which has authorized any person, other than a majority of the board, to endorse on a plan the approval of the board or to make any other certificate under the subdivision control law, shall transmit a written statement to the register of deeds and the recorder of the land court, signed by a majority of the board, giving the name of the person so authorized. The endorsement under this section may include a statement of the reason approval is not required."

their parcel into two lots as shown on the plan would, of course, have been a subdivision. Board approval would have been required and presumably would have been refused unless a variance or other lawful basis for building on the lot had been shown. But the owners have recorded and acted under a plan which, with its indorsement, shows that lot B is not an area which, in the absence of further zoning action, can be built on. Their only right to act under the plan is on the construction that it is not a plan of a subdivision because of the anomalous character of lot B. In effect they have recorded a plan which disavows any claim of existing right to use lot B as a zoning by-law lot.

Under such a plan, apart from the purported determination by the planning board, the building commissioner could rightly be "satisfied that the lot [A] . . . is not within a subdivision" so that permits should issue under § 81Y.

It is now inconsequential that the building commissioner in all likelihood would not have made such a determination in the absence of an indorsement under § 81P. The owners and builders have received no substantive right to which they were not entitled and no substantive provision of any by-law or statute will be violated because the indorsement remains on the plan, and the permits remain outstanding. That invalidation of the permits would bar the proposed structure because of a new zoning by-law is not a ground for relief under § 81Y.

It is also now inconsequential that upon receipt of the plan the chairman should have submitted it to the planning board, and that the board should have placed thereon (or should have caused the applicant to place thereon) the statement that lot B was not a lot which could be used for a building and that the plan was not a plan of a subdivision.

There is no occasion to enforce the public right to have a correct indorsement on the recorded plan. No one should be misled by the existing indorsement into thinking that lot B is a lot for zoning by-law purposes.

2. The proposed substitute bill did not in terms set out the indorsement on the plan and could have been construed

as alleging a proposal to build on a lot or lots in a subdivision. The judge, however, in passing upon the issue of amendment, was entitled to regard the allegations of the original sworn bill and of the other pleadings before him.

3. As the owners' rights do not depend upon valid action by the board we need not determine the effect of the failure to give notice to the town clerk. Lack of authority in the inspector is alleged only as a legal conclusion and, were the allegation otherwise adequate, there would be doubt whether permits could be revoked on such a ground. The allegations as to lack of authority from all the trustee owners to their coöwner and to the others proposing to build add nothing to the bill.

4. There is no basis for thinking that by amendment the plaintiffs could set out a good cause under § 81Y.

*Interlocutory decrees affirmed.*

*Final decrees affirmed.*