JOHN H. SHEA, trustee[1], vs. BOARD OF APPEALS OF
LEXINGTON.

No. 92-P-273.

Middlesex. March 24, 1993. - November 23, 1993.

Present: ARMSTRONG. BROWN. & PORADA. JJ.

*Subdivision Control*, Approval not required, Frontage on public way. *Zoning*, Access to public way. *Way*, Public: subdivision control. *Real Property*, Registered land.

A municipal planning board's endorsement pursuant to G. L. c. 41, § 81P, on a plan of land, "[A]pproval [under the Subdivision Control Law] not required," followed by registration of the land under G. L. c. 41, § 81FF, did not operate to bind the town with respect to a zoning requirement that a buildable lot have the necessary frontage on a street, where the "street" shown on the subdivision plan had never been constructed. [521-524]

CIVIL ACTION commenced in the Superior Court Department on September 30, 1980.

The case was heard by *James F. McHugh*, J.

*J. Owen Todd* for the plaintiff.

*Arthur P. Kreiger* for the defendant.

ARMSTRONG, J. In 1913, before any of the events on which the plaintiff's appeal is predicated and before subdivision control was adopted in Lexington, the land on which the plaintiff's lot is situated was shown on a subdivision plan filed by one Wilbur and recorded in the Middlesex (South) registry of deeds. The plan depicted Rockville Avenue as an east-west street, running from Philip Road on the west to Swan Lane on the east and intersected by William Avenue (shown on later plans as Davis Road). Four adjacent lots shown on that plan (67, 68, 69, and 70), located at the southeast cor-

---

[1]Of the John H. Shea Realty Trust.

ner of the intersection and fronting on Rockville Avenue, were conveyed to the plaintiff by deed in 1978. In 1978, the plaintiff submitted a plan to the planning board showing lots 67 and most of 68 combined as a new lot 1 and the remainder of lot 68 and all of lots 69 and 70 combined as a new lot 2. Lots 1 and 2 were shown as having frontage on Rockville Avenue of, respectively, 122.2 feet and 125 feet. The plan was endorsed as not requiring approval under the Subdivision Control Law. See G. L. c. 41, § 81P. In 1991 the plaintiff, having apparently conveyed the corner lot, lot 1, with a house to one Heitman, was granted registration of lot 2 by decree of the Land Court.

In 1980 the plaintiff applied for a building permit for lot 2. This was denied by the building commissioner on the ground that the portion of Rockville Avenue on which the lot fronted was not considered to be a street. The board of appeals affirmed the denial, rejecting the argument by plaintiff's counsel that the planning board's endorsement of "approval not required," with no indication on the plan that lot 2 lacked the requisite frontage (125 feet) on a street to be a buildable lot under the zoning by-law, should bind the town for zoning purposes, at least as to the lot's having frontage on a street. In the Superior Court, the plaintiff sought and obtained a partial summary judgment declaring that "Rockville Avenue is a way approved pursuant to [the] Subdivision Control Law by operation of [G. L. c. 41, § 81FF]." This was not a final judgment, not carrying the finding prescribed by Mass.R.Civ.P. 54(b), 365 Mass. 821 (1974), and the judge who undertook to complete the case in effect reversed the partial summary judgment and affirmed the decision of the board. The plaintiff appealed.

It is uncontested that Rockville Avenue is a paved road with houses in the section that runs from Swan Lane west to the plaintiff's lot line, including the first ten feet in front of his lot. The paving stops at that point, and Rockville Avenue becomes a path, some fifteen feet in width, wooded on both sides, with boulders and ledge outcroppings, descending at an increasingly steep slope (starting at eight and one-half per-

cent, reaching thirteen and one-half percent at the plaintiff's west lot line, and reaching nineteen and one-half percent thereafter) to the Davis Road intersection. The relatively short portion of Rockville Avenue from Davis Road west to Philip Road is paved and sidewalked. Plainly the short un-paved section of Rockville Avenue that borders the plaintiff's lot and lot 1 is not suitable *in fact* for vehicular travel, except perhaps by four-wheel drive, all-terrain vehicles during nonwinter months.

The Lexington zoning by-law requires frontage on a "street." The by-law definition of "street" tracks the wording of G. L. c. 41, § 81L, defining "subdivision" to exclude divisions which show every resulting lot to have the requisite frontage for buildability on (*a*) a public way, (*b*) a way shown on a previously approved subdivision plan, or (*c*) a way that predates subdivision control that has, in the planning board's opinion, width, grades, and construction suitable and adequate for vehicular traffic and the installation of utilities.

The plaintiff's argument centers on (*b*): his contention is that his 125 plus[2] feet of frontage on Rockville Avenue is frontage on a "street," as required by the Lexington zoning by-law, because Rockville Avenue has the status of a way shown on an approved subdivision plan. To be sure (as he recognizes), the planning board has never in fact approved a plan incorporating the portion of Rockville Avenue east of Davis Road (G. L. c. 41, § 81U), but it has, on two occasions, endorsed such plans as not requiring approval under the Subdivision Control Law (G. L. c. 41, § 81P).[3] His argument is that, under § 81FF, when he obtained registration of his lot, shown as bounded by Rockville Avenue, his plan became "for the purposes of the subdivision control law [one]

---

[2] A later plan shows the plaintiff's actual frontage as 129.25 feet.

[3] In 1956 a couple named Yntas or Yntase registered lots on Rockville Avenue opposite the plaintiff's lot.

deemed to be, and . . . invested with all the rights and privileges of, a plan approved pursuant to said law."[4]

The operation of that sentence is not altogether clear, because the court is required under § 81FF to verify only that a plan of subdivision either has been approved by the planning board "or would otherwise be entitled . . . to be recorded in the registry of deeds." A plan endorsed "approval not required" under § 81P is entitled to recordation under the first paragraph of § 81X. If, as the plaintiff argues, registration elevates a § 81P endorsement to the level of a § 81U approval, it is clear from the express language of § 81FF that it does so only "for the purposes of the subdivision control law." At most, then, a registration under § 81FF, like a § 81P endorsement, gives the lots shown on the plan no standing as lawful lots under a zoning code. See *Smalley* v. *Planning Bd. of Harwich*, 10 Mass. App. Ct. 599, 603 (1980), and cases cited; *Arrigo* v. *Planning Bd. of Franklin*, 12 Mass. App. Ct. 802, 807 (1981); *Corrigan* v. *Board of Appeals of Brewster, ante* 514 (1993). Even for purposes of the Subdivision Control Law, a planning board

---

[4]The text of the second paragraph of § 81FF, as inserted by St. 1953, c. 674, § 7, reads in material part: "[A]ny plan of a subdivision which has been registered or confirmed by said court before February first, nineteen hundred and fifty-two, whether the subdivision control law was in effect in the city or town in which the subdivision was located or not, and whether the plan of the subdivision was approved by the planning board or not, shall have the same validity in all respects as if said plan had been so approved, but the land court shall not register or confirm a plan of a subdivision . . . which has been filed on or after February first, nineteen hundred and fifty-two, unless it has first verified the fact that the plan filed with it has been approved by the planning board, or would otherwise be entitled if it had related to unregistered land, to be recorded in the registry of deeds. The land court shall have jurisdiction in so far as affects land registered or to be registered or confirmed under chapter one hundred and eighty-five, to determine whether the subdivision control law has been complied with, and shall verify before registering or confirming any plan . . ., that the plan . . . is entitled to be recorded in accordance with the subdivision control law, and every plan heretofore or hereafter registered or confirmed by the land court pursuant to said chapter one hundred and eighty-five *shall for the purposes of the subdivision control law be deemed to be, and shall be invested with all the rights and privileges of, a plan approved pursuant to said law*." (Emphasis added.)

acts "properly [in] deny[ing] an 81P endorsement because of inadequate access, despite technical compliance with frontage requirements, where access is nonexistent for the purposes set out in § 81M." *Perry* v. *Planning Bd. of Nantucket*, 15 Mass. App. Ct. 144, 153 (1983) (plan showing frontage on two paper ways, one an unconstructed "public way," the other shown on a Land Court plan but not constructed on the ground).

Not only for the good of the homeowner, but also for the safety of the public, a town can insist that homes not be built on lots lacking adequate access for fire trucks and emergency vehicles. Even if the plaintiff's argument is accepted and Rockville Avenue is in legal contemplation "a way shown on a plan previously approved and endorsed in accordance with the subdivision control law,"[5] but see *Corrigan* v. *Board of Appeals of Brewster, supra* at 517, the section on which the plaintiff's lot fronts does not exist *in fact*. A fire truck cannot drive on a plan. A zoning by-law which requires frontage on a way shown on an approved plan must be understood, if the purpose of the by-law is not to be undermined, to require an *actual* way, constructed on the ground, not just a depiction of a way on a plan. The planning board's approval may have legal significance under the zoning by-law's definition of "street" if the way depicted on an approved plan has been constructed as approved (Rockville Avenue is shown on the assertedly approved plan as a way forty feet in width) but not where it has never been constructed at all. Compare *Richard* v. *Planning Bd. of Acushnet*, 10 Mass. App. Ct. 216, 218-220 (1980); *Perry* v. *Planning Bd. of Nantucket*, 15 Mass. App. Ct. at 150-153, 154-155.

*Nasca* v. *Board of Appeals of Medway*, 27 Mass. App. Ct. 47 (1989), should not be read as requiring zoning officials to give status to paper roads that appear on plans that have been endorsed under the Subdivision Control Law. In *Nasca* the court was confronted with a zoning by-law amendment

---

[5] G. L. c. 41, § 81L, definition of "subdivision," exception (*b*), as amended by St. 1965, c. 61. Zoning by-law of Lexington § 2, definition of "street, road, or way," par. b (1987).

passed by town meeting with the specific objective of qualifying Kadin Lane as a street for purposes of the frontage requirement of the zoning by-law. The amendment was inartistically drawn; to give it effect, the court read "a way . . . shown on a plan approved by the [p]lanning [b]oard" to include "a way approved by the planning board." *Id.* at 49-54. Kadin Lane was so approved, as evidenced primarily by the planning board's having recommended the zoning amendment to the town meeting.[6] *Id.* at 53.

The building commissioner and the board of appeals were correct in withholding a building permit for the plaintiff's lot so long as the section of Rockville Avenue on which it fronts remains unconstructed.

*Judgment affirmed.*

---

[6]In *Nasca* the court also took into account that a planning board should endorse a plan under § 81P only if vital access is reasonably guaranteed and the board had granted a § 81P endorsement to a plan showing lots fronting on Kadin Lane. The pivotal factor, however, was the planning board's role in the legislative history of the by-law amendment. *Id.* at 53.