Henry, Bruce R., J.
Plaintiff, Marilyn Jacobs, brings this action pursuant to G.L.c. 30A, § 14, seeking judicial review of a final decision of the Department of Social Services to support a finding of neglect by the plaintiff of her grandson, William Jacobs. For the following reasons the plaintiffs motion for judgment on the pleadings is ALLOWED, and the Department’s decision is hereby reversed.

BACKGROUND

The Administrative record (R.) sets forth the following facts relevant to the plaintiffs claims in this matter.
Lisa Jacobs (the “mother”) gave birth to William Jacobs at Massachusetts General Hospital on August 1, 2002. During the pregnancy, mother lived with the plaintiff (R. 7, ¶7). On August 6, 2002, while mother and child were still at the Hospital, the Department of Social Services (“DSS”) received a report alleging neglect of William Jacobs by his mother pursuant to G.L.c. 119, §51A. (R. 8, ¶9.) The 51A report listed the plaintiff as an adult in the home, and not as an alleged perpetrator (R. 15.) She was not contacted or interviewed as part of the investigation into the report. (R. 8, ¶9.) The only reference made to plaintiff in the report was her refusal to allow visiting nurses services and home health aid to her home because the house was a mess; plaintiff states the items in her home were from other people’s estates that she was saving for her children. (R. 8, ¶¶16-17; 17.)
Contact by the DSS screener with a Weston Police dispatcher resulted in a report that the family is well known to the police and that both mother and plaintiff are paranoid and had been reclusive until the mother’s pregnancy. (R. 10, ¶32; R. 17, Exh. A.) In the investigation report it was noted that the mandated reporter, a social worker at the hospital, stated that there was collusion between the mother and plaintiff around the baby having medical problems, and that neither saw the baby as appearing normal. (R.20; R. 64.)
On August 7, 2002, mother and William were discharged from the hospital. The mother proceeded to plaintiffs home after her discharge. (R. 7, ¶7.) On the same day, DSS conducted an investigation; the investigator reviewed previous police reports of 16 calls involving plaintiff to police between 1996 and 2002, and went to the plaintiffs home along with a Weston police officer. The investigator viewed the outside of *570 plaintiffs home and looked in through the windows and reported that what appeared to be the kitchen and living room were completely covered in debris, trash, food, papers, household items, and boxes. The trash was piled up to the ceiling with debris filling pathways throughout the rooms. (R. 8, ¶¶11-12.) The investigator talked to the mother who claimed she was only a temporary guest in the home and that she had secured other housing (R. 21). During this investigation there was an incident involving the mother and the child, and the Department assumed custody of William Jacobs because of the mother’s mental health issues and the poor condition of the home (R. 8, ¶ 14). No contact was made with the plaintiff who was not present during the incident (R. 8, ¶9; R. 38, 8/8/02 Letter). The plaintiffs house has been cleaned up since the investigation (R. 9, ¶18).
After the investigation, the Department supported the 51A report on August 8, 2002, due to the unsanitary, unsafe conditions of the home environment; plaintiffs refusal to allow in-home services for mother and infant; and the plaintiffs mental health issues. (R. 8, 1110.)
Plaintiff requested a Fair Hearing in accordance with 110 CMR§10.08, and a Fair Hearing was held on September 14, 2005. At this hearing, plaintiff denied having a duty towards the child (R. 9, ¶28). The Hearing Officer found that there was sufficient evidence to support the finding that plaintiff was a caretaker based on the mother’s living in the plaintiffs home during all or part of her pregnancy, plaintiffs presence at the hospital, and plaintiffs ownership of the house at 20 Colchester Road, Weston, MA (R. 10, 129). The Hearing Officer found no evidence that plaintiff was mentally ill (R. 10, 130). The Hearing Officer affirmed the Department’s decision of August 8, 2002 to support the report for neglect of William Jacobs by plaintiff because the poor condition of plaintiffs home presented safety and health issues for the child and because the plaintiffs refusal to allow services into the home placed the child at risk of injury. (R. 11.) The Hearing Officer also found that the plaintiffs refusal to allow services for William into her house placed William at risk of injury. (R. 11.) The plaintiff is a registered nurse and saw no need for those services since she was qualified to provide them. (R. 9, ¶¶23-24.)

DISCUSSION

The scope of review of an agency’s decision is defined by G.L.c. 30A, § 14. Howard Johnson Company v. Alcoholic Beverages Control Commission, 24 Mass.App.Ct. 487, 490 (1987). Pursuant to G.L.c. 30A, §14(7) the court may either affirm, remand, set aside or modify an agency’s decision “if it determines that the substantial rights of any party may have been prejudiced because the agency’s decision is:
(c) based upon an error of law; or
(e)unsupported by substantial evidence; or
(f) unwarranted by facts found by the court on the record as submitted . . .; or
(g) arbitrary or capricious, an abuse of discretion, or otherwise not in accordance with law."
According to G.L.c. 30A, §1(6), “substantial evidence means such evidence as a reasonable mind might accept as adequate to support a conclusion.” The party appealing an administrative decision bears the burden of demonstrating the decision’s invalidity. Merisme v. Board of Appeals on Motor Vehicle Liab. Policies and Bonds, 27 Mass.App.Ct. 470, 474 (1989); also Faith Assembly of God v. State Bldg. Code Comm’n., 11 Mass.App.Ct. 333, 334 (1981). In reviewing the agency’s decision, the court is required to give due weight to the agency’s experience, technical competence, specialized knowledge, and the discretionary authority conferred upon it by statute. Flint v. Commissioner of Pub. Welfare, 412 Mass. 416, 420 (1992); Seagram Distillers Co. v. Alcoholic Beverages Control Comm’n., 401 Mass. 713, 721 (1988). The reviewing court may not substitute its judgment for that of the agency. Southern Worcester County Regional Vocational School Dist. v. Labor Relations Comm’n., 386 Mass. 414, 420-21 (1982). A court may not dispute an administrative agency’s choice between two conflicting views, even though the court would justifiably have made a different choice had the matter come before it de novo. Zoning Bd. of Appeals of Wellesly v. Housing Appeals Comm’n., 385 Mass. 651, 657 (1982). The court does not act as a de novo finder of fact, nor is the review a trial de novo on the record that was before the agency. Fergione v. Director of the Division of Employment Security, 346 Mass. 281, 283 (1985).
“Neglect means failure by a caretaker ... to take those actions necessary to provide a child with minimally adequate food, clothing, shelter, medical care, supervision, emotional stability, and growth, or other essential care . . .” 110 CMR §2.00 (emphasis added). “Caretaker” is defined as “a child’s (a) parent, (b) stepparent, (c) guardian, (d) any household member entrusted with the child’s health or welfare, (e) any other person entrusted with the responsibility for a child’s health or welfare . . .” 110 CMR §2.00. “The caretaker definition is meant to be construed broadly and inclusively to encompass any person who is, at the time in question, entrusted with a degree of responsibility for the child." Id. (emphasis added). In order to support a report for neglect under §5IB, the Department must have reasonable cause to believe that an incident of neglect by a caretaker occurred. 110 CMR 4.32. The plaintiff contends that the Hearing Officer’s decision to support the agency’s finding of neglect is not supported by substantial evidence, because plaintiff is not a caretaker.
The evidence in this record does not meet the substantial evidence test. The Hearing Officer based her finding that the plaintiff was a caretaker on the evidence that the child’s mother lived with the plaintiff *571 and that plaintiff took on caretaking responsibilities for the child. The Hearing Officer found that the mother was more than a temporary guest in the plaintiffs home. (R. 7, ¶6.) She based this conclusion on evidence that the mother had lived in plaintiffs home for all or part of her pregnancy; plaintiff was present at the hospital with the mother and child; and the mother’s return to plaintiffs home with the child after her discharge from the hospital. (R. 6, ¶¶6-7.) Plaintiff testified that the mother was only living in plaintiffs home during her pregnancy from February to August 2002, because it was a difficult pregnancy. (R. 91-92.) Plaintiff also testified that mother did not intend to live with her after the pregnancy, that she had in June 2002, already found other housing, and that, in fact, the mother moved into other housing the same day as her discharge from the hospital. (R. 92-94, 100.) Mother also asserted that she was only a temporary guest in plaintiffs home and that she had already secured other housing at Summerfield Suites in Waltham (R. 21, Exh. B). The investigator stated that she did not believe the mother was only a temporary guest because of the fact that the mother was found in plaintiffs home after her discharge from the hospital. (R. 76, Erin Senges testimony.) The Hearing Officer gives no reason for crediting the investigator’s disbelief and not the plaintiffs testimony. In the face of conflicting testimony an agency is required to confront problems in testimony and to provide “an explicit analysis of credibility and the evidence bearing on it.” Herridge v. Bd. of Registration in Medicine, 420 Mass. 154 (1995), citing Morris v. Bd. of Registration in Medicine, 405 Mass. 103, 107 (1989). There was no evidence that the plaintiff was present at the time of the discharge from the Hospital of her daughter and grandson or that she was aware that her daughter had gone to her home with her grandson upon discharge or that she was present at all when her grandson was at her home on the day in question. The investigator did not know during which periods of time the mother was living in the plaintiffs home, and stated that it was not pertinent to her investigation during what periods of time the mother was not in Weston and when she was in Philadelphia working as an intern. (R. 75-78.) The mother’s admitted presence in the plaintiffs home during her pregnancy is not substantial evidence to show that the mother intended to live in plaintiffs home after the birth of the child or that the plaintiff knew the mother was returning to plaintiffs home with the child.
The Hearing Officer found that the plaintiffs refusal to allow the services of a home health aide and/or a visiting nurse placed the child at risk of injury. There was no indication of any particular need for those services in this case or that what was recommended was anything other than a routine well-child visit. The Hearing Officer made no note of the fact that the mother and child had been seen by a nurse practitioner from the baby’s pediatrician’s office on the day in question. The plaintiff is a registered nurse with over 45 years of experience, including work in the area of pediatrics. The mother had the ultimate right to refuse these services, and after the refusal, the hospital discharged her. There was not substantial evidence before the Hearing Officer to support her conclusion that the plaintiffs refusal to have home health services provided to the child in her home placed the child at risk of injury.
Whether plaintiff was a caretaker because of her refusal of visiting nurse/home health aid services depends on whether during the time the reported neglect occurred, the plaintiff was responsible for the well-being of the child in her capacity as a registered nurse. There is no evidence that the plaintiff was present during the time when the mother brought the child to plaintiffs home, and there is no evidence that the plaintiff had knowledge that the mother had brought the child to her home. In this case, the plaintiff was not acting in her capacity as a registered nurse and the mother was with the child at all times. The plaintiff cannot be found to have been acting as a parent substitute because she was never alone with the child. In this case, the mother was acting as caretaker of the child after her discharge from the hospital; there is no evidence that plaintiff was present at the hospital during the discharge or at her home after the mother brought the child there. There was no transfer of responsibility for the child from the mother to the plaintiff. Here, the plaintiff was not acting as a registered nurse doing a well-baby visit at the time of the reported neglect. There is no evidence that the plaintiff had any contact with the mother during or after the time the mother was discharged from the hospital. The sole fact that plaintiff may have accepted some responsibility for doing a well-baby visit does not make her responsible for the child when she is not acting in her capacity as a registered nurse caring for the child.
The Hearing Officer stated that the plaintiff “was present in the hospital with Mother and infant... and the owner of the house and a household member . . . In this capacity, the [Plaintiff] was entrusted with a degree of responsibility for William and therefore was a caretaker, consistent with 110 CMR 2.00.” That conclusion is not supported by the evidence before the Hearing Officer and is an incorrect reading of the cited regulation. As noted above, there was no evidence at all that the plaintiff was present in the house with the mother and the child at any time or that she was even aware that the mother had brought the child to her home on the day in question. The regulations do not make every household member a “caretaker”; it is only those household members who are entrusted with the responsibility for a child’s health or welfare. At the time in question, the evidence does not demonstrate that the plaintiff was present at the house or even aware that the mother and child were there. There was *572 no passing off to her of any responsibility for the child’s care or welfare. The finding that the plaintiff was a caretaker is not supported by substantial evidence.

CONCLUSION

I find that there was not sufficient evidence to support the conclusions of the Hearing Officer that the plaintiff was a caretaker for William or that William was neglected by the plaintiff.

ORDER

For the foregoing reasons; the decision of DSS to support a report of neglect as to the plaintiff, Marilyn Jacobs, was not supported by substantial evidence on the administrative record and must be set aside. Judgment shall enter in the plaintiffs favor and the decision of the department is hereby vacated and the department is to notify the plaintiff and any person or entity to whom that decision was conveyed that the report of neglect has not been supported.